## 19477. FAGAN v. THE STATE.

Decided April 9, 1929.

*T. J. Ripley, Bryan & Middlebrooks, M. H. Meeks,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

Luke, J. ▇ The indictment in this case charged and accused "Frank Fagan with the offense of burglary, for that said accused, in the county of Fulton and State of Georgia, on the 9th day of October, 1928, with force and arms, did break and enter the dwelling house of Nellie Brewer, where valuable goods were contained, with intent to commit a felony, said felony being the intent to kill and murder the said Nellie Brewer." "The intent to kill and murder the said Nellie Brewer" is a material issue and essential to a conviction under this indictment. "The position that descriptive averments can not be rejected, extends to all allegations which operate by way of description or limitation of that which is material. Bishop says: 'If the indictment sets out the offense as done in a particular way, the proof must show it so, or there will be a variance. And where there is a necessary allegation which can not be rejected, yet the pleader makes it unnecessarily minute in the way of description, the proof must satisfy the description as well as the main part, since the one is essential to the identity of the other.'" *Fulford* v. *State,* 50 *Ga.* 593; *Haupt* v. *State,* 108 *Ga.* 53 (34 S. E. 313, 75 Am. St. R. 19). It is conceded by his counsel "that Frank Fagan broke and entered the dwelling-house of Nellie Brewer, situate in Atlanta, Fulton county, Georgia, on October 9, 1928; that goods of value were contained therein; that the said Frank Fagan broke up and mutilated some of the furnishings and fixtures therein;" and the record shows a very aggravated case in that respect. However, the question for determination is not whether the defendant has been guilty of gross misconduct or of

*some* crime, but whether he is guilty of the crime charged in the indictment, and has the State proved the material allegations of the indictment. To constitute the crime of burglary, the breaking and entering must be "with intent to commit a felony or larceny" (Penal Code, § 146), and in the instant case the State alleged that the defendant broke and entered with the intent to kill and murder Nellie Brewer. No matter what other gross misconduct the defendant may have been guilty of, this material allegation must be proved, to authorize a conviction, and the State failed to carry this burden. The evidence shows that the house was in the dark before the defendant broke in, the lights having been turned off, and that the defendant broke three windows on the front of the house with flower pots and got in and proceeded to mutilate the place. Officers were called and there was considerable shooting; but the undisputed evidence shows that Nellie Brewer was not in the house when the defendant entered it, and there is no evidence to show that the defendant attempted in any way to kill Nellie Brewer after breaking and entering the house, or attempted to catch her; she having fled before he entered. No witnesses swore that they saw the defendant with a pistol, and he denies that he had a pistol. There was some evidence that there was shooting in the house while he was in there. However, since it is undisputed that Nellie Brewer was not in the house while this shooting was going on, mere shooting in a vacant house could in no way show an attempt to kill Nellie Brewer. Nellie Brewer testified: "Frank Fagan came to my house and rang the door bell. . . He was at the door ringing the bell. We were all in the dark house. Frank Fagan was at the door. . . He rapped again. He took a flower pot and threw it through the window. . . The officers came soon-after. . . After the shooting I returned to the house and the officers were there. . . I don't know who did the shooting. I did not see the persons that did the shooting. As to how far I was when I heard the shooting, I was at the corner of Simpson and Griffin street, just a block. . . When he threw the first flower pot in . . we went out the back. . . I did not see a pistol on Frank. As to how long I waited at this place a block away, I was excited and don't know. . . I stayed there until the shooting ceased. . . We were not *seen* by him. We left unseen by him. We left the back. . . He never shot at me at all. *He*

*never attempted to shoot at me. . . I never saw him in the house at all.* I left. I left the house. Nobody shot at me." She testified that the defendant drew a knife on her that afternoon, but that was several hours *before he broke and entered* the house, not at the time or after he broke and entered; and the statute provides that he must break and enter *with* the intent. This circumstance alone is not sufficient to show, to the exclusion of every other reasonable hypothesis, the intent alleged in the indictment. H. W. Armstrong, an officer, testified: "I waited there [after the shooting] until the persons who lived in the house came. I went through the house with her,—I mean the girl that lives there and that testified before myself. . . I did not see Frank shoot at anybody or make an attempt to shoot at anybody. . . Nellie Brewer was not in the house when we got there." The defendant might have broken into the house for the purpose of rape, rather than for the purpose of murdering Nellie Brewer. It is not unreasonable to conclude that he had a fit of temper and that he broke and entered for the purpose of doing just what he did, viz., break up the furniture and thereby give vent to his wrath. Mere breaking furniture and fixtures, or even shooting in a vacant house while Nellie Brewer was a block away, does not show an attempt to kill Nellie Brewer; and since it is undisputed that she was not in the house at the time the defendant was, and the State failed to show any effort on the part of the defendant to kill her at the time or after he broke and entered the house, the circumstantial evidence as to the defendant's intent in breaking and entering the house was not sufficient to exclude every reasonable hypothesis save that he broke and entered with the intent to kill Nellie Brewer, as alleged in the indictment; and for this reason the court erred in overruling the motion for a new trial. This ruling disposes of the general grounds of the motion for a new trial and the first five special grounds, which are but amplifications of the general grounds. The other special grounds of the motion show no error that requires a new trial, and none of them except the 8th need be discussed.

■ The 8th special ground of the motion alleges error because of the remarks of the court as disclosed by the following: "When the State rested, defendant's counsel stated to the court that he wished to make a motion; whereupon the following took place:

Mr. Ripley: Your honor, I would like to make a motion. The court: I overrule the motion. Mr. Ripley: I would like to state the ground, so you can catch the point. The court: I have already caught it. I know what it will be. Mr. Ripley: Will you agree that it is going to be what I say? The court: Yes, I will agree that you will say anything you want to say. Mr. Ripley: And I can put that in? The court: Yes." "Counsel for the defendant having had full opportunity to move for a mistrial on the ground of these statements of the court in the presence and hearing of the jury, and having failed to do this, the defendant can not, after the return of the adverse verdict, have that verdict set aside and a new trial granted" because of such statements. *Tanner* v. *State,* 163 *Ga.* 130 (9) (135 S. E. 917), and cit. "Prejudicial remarks of the judge to counsel, where there is no motion for a mistrial, are not cause for a new trial." *Ga. Utilities Co.* v. *Ward,* 37 *Ga. App.* 45 (138 S. E. 588). However, for the benefit of the bench and bar, we deem it proper to say that these remarks of the court tended to belittle the defendant's counsel and discredit him before the jury, and were therefore improper.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*